IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAR GREEN, | : | |
|     Petitioner | : | No. 1:25-cv-01051 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| WARDEN F. GARZA, | : | |
|     Respondent | : | |

## MEMORANDUM

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a "Motion for Temporary Injunctive Relief Order" filed by pro se Petitioner Jamar Green ("Green"). For the reasons set forth below, the Court will deny the "Motion for Temporary Injunctive Relief Order" and dismiss the Section 2241 petition without prejudice for failure to exhaust.

I.   BACKGROUND

    A.   Green's Conviction and Sentence

On June 21, 2021, Green was sentenced to seventy-eight (78) months' imprisonment after pleading guilty to conspiracy to possess with intent to distribute MDMA (21 U.S.C. §§ 841(a)(1),[1] (b)(1)(C), 846) in the United States District Court for the Eastern District of Virginia. See (Doc. No. 1 at 1); United States v. Green, No. 20-cr-00001 (E.D. Va. filed Jan. 8, 2020), ECF No. 156; United States v. Green, No. 21-4336, 2023 WL 5125092, at *1 (4th Cir. Aug. 10, 2023) (unpublished), cert. denied, 144 S. Ct. 2564 (2024). Green appealed from his judgment to the Fourth Circuit Court of Appeals, which dismissed part of the appeal due to an appellate waiver

---

[1] MDMA is also referred to as ecstasy. See Ecstasy or MDMA (Also Known As Molly), UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, https://www.dea.gov/factsheets/ecstasy-or-mdma-also-known-molly (last visited September 5, 2025).

he executed as part of his guilty plea agreement and affirmed as to the remainder of the appeal. See Green, 2023 WL 5125092, at *2.

    **B.**    **Procedural History**

Green, who is incarcerated at United States Penitentiary Canaan ("USP Canaan"), filed his Section 2241 petition in this case on June 3, 2025.[2] (Doc. No. 1.) On June 23, 2025, the Court issued an Order directing Respondent Fernando Garza, Warden of USP Canaan, to file a response to Green's Section 2241 petition within twenty (20) days of the Order. (Doc. No. 5.) Respondent timely filed his response in opposition to the petition on July 14, 2025.[3] (Doc. No. 7.) After receiving an extension of time (Doc. No. 9), Green filed his traverse on August 5, 2025 (Doc. No. 10). Twenty (20) days later, Green filed a "Motion for Temporary Injunctive Relief Order." See (Doc. No. 11).

    **C.**    **The Federal Bureau of Prisons' Administrative Remedy Program**

The Federal Bureau of Prisons ("BOP") has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of [their] confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is

---

[2] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, Green includes a declaration with his petition in which he states that he delivered his petition to the prison mailing system on June 3, 2025. (Doc. No. 1 at 8.) As such, the Court uses June 3, 2025, as the petition's filing date, even though the Clerk of Court did not docket it until June 10, 2025.

[3] Technically, the twentieth day for Respondent to comply with the Order was July 13, 2025. However, because that date fell on a Sunday, Respondent had until Monday, July 14, 2025, to file his response. See Fed. R. Civ. P. 6(a)(1)(C) (providing that when "computing any time period specified" in the Federal Rules of Civil Procedure and "the period is stated in days or a longer unit of time[,] . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday" if "the last day [of the period] is a Saturday, Sunday, or legal holiday").

unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response to this appeal is due within twenty (20) calendar days; however, the time for a response may be extended by twenty (20) days. See id. § 542.18.

### D. Green's Use of the BOP's Administrative Remedies

According to the BOP's records, Green has filed one hundred and fifty-nine (159) administrative remedies while incarcerated in its facilities. (Doc. Nos. 7-2 ¶ 5; 7-4.) Of those administrative remedies, only two (2) were related to home confinement or prerelease custody placement. (Doc. Nos. 7-2 ¶ 5; 7-4 at 73, 77, 80; 7-5; 7-6.)

The first of those administrative remedies, dated March 30, 2025, was received by USP Canaan on April 10, 2025, and assigned No. 1236522 ("Remedy 1236522").[4] (Doc. Nos. 7-2 ¶ 6; 7-4 at 73; 7-5 at 4.) In Remedy 1236522, Green generally complained that he should receive twelve (12) months of home confinement under the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008) ("SCA"). See (Doc. No. 7-5 at 4). Through a written response dated April 17, 2025, Respondent denied Green's request. (Doc. Nos. 7-2 ¶ 6; 7-4 at 73; 7-5 at 5.) Green then filed an appeal from Respondent's denial to the Regional Director on May 9,

---

[4] It appears that Green filed this administrative remedy after unsuccessfully attempting an informal resolution. See (Doc. No. 7-5 at 6–8).

3

2025.  See (Doc. Nos. 7-2 ¶ 6; 7-4 at 77; 7-5 at 2).  The Regional Director denied Green's appeal via a response dated June 11, 2025.  (Doc. Nos. 7-2 ¶ 6; 7-4 at 77; 7-5 at 3.)  Green did not file a further appeal to the BOP Central Office.  See (Doc. No. 7-2 ¶ 6).

The second of those administrative remedies, dated May 2, 2025, was received by USP Canaan on May 15, 2025, and assigned No. 1240943 ("Remedy 1240943").[5]  (Doc. Nos. 7-2 ¶ 7; 7-4 at 77; 7-6 at 4.)  In Remedy 1240943, Green once again requested twelve (12) months of home confinement.  (Doc. Nos. 7-2 ¶ 7; 7-4 at 77; 7-6 at 4.)  Respondent denied Green's request via a written response dated May 19, 2025.  (Doc. Nos. 7-2 ¶ 7; 7-4 at 77; 7-6 at 3.)  On May 30, 2025, Green appealed from Respondent's denial to the Regional Director.  (Doc. Nos. 7-2 ¶ 7; 7-4 at 80; 7-6 at 2.)  It appears that the Regional Director's response to the appeal was due by July 29, 2025.  (Doc. Nos. 7-2 ¶ 7; 7-4 at 80.)

## II. LEGAL STANDARDS

### A. Motion for a Temporary Restraining Order ("TRO") or a Preliminary Injunction

Federal Rule of Civil Procedure 65 allows federal courts to issue various forms of injunctive relief, including TROs and preliminary injunctions.  See Fed. R. Civ. P. 65(a), (b).  "A preliminary injunction must be issued with notice to the adverse party.  A TRO, in contrast, may be issued without notice where it is clearly shown that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Hope v. Warden York County Prison, 956 F.3d 156, 160 (3d Cir. 2020) (internal citations and quotation marks omitted); see also Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 633 F. Supp. 2d 1257, 1267 (D.N.M. 2008) ("The primary difference between a TRO and a preliminary

---

[5] As with his first administrative remedy, it appears that Green filed his second administrative remedy after unsuccessfully attempting an informal resolution.  See (Doc. No. 7-6 at 5–7).

4

injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration . . . ."). Nevertheless, "[t]he standard for granting a preliminary injunction under Rule 65 is the same as that for issuing a TRO." See Cerro Fabricated Prods. LLC v. Solanick, 300 F. Supp. 3d 632, 646 n.5 (M.D. Pa. 2018).

"A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." Winter v. Nat. Res. Council, Inc., 555 U.S. 7, 20 (2008). These factors inform a balancing test, but the first two factors—likelihood of success and irreparable harm—are essential. See Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017) ("[W]e have repeated that a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." (citations omitted)). So "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." See id. at 179.

In addition, preliminary injunctions are designed to:

> preserve the status quo until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (quoting Frank's GMC Truck Center, Inc. v. General Motor Corp., 847 F.2d 100, 102 (3d Cir. 1988)). The facts clearly must support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied. United States v. Stazola, 893 F.2d 34, 37 n.3 (3d Cir. 1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989); [ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)] (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which

> cannot be redressed with money damages). Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief.
>
> Moreover, because the purpose of preliminary injunctive relief is to prevent irreparable injury pending the resolution of the underlying claims on their merits, "the injury claimed in the motion for preliminary injunctive relief must relate to the conduct alleged and permanent relief sought in the plaintiff's complaint." James v. Varano, [No. 14-cv-01951,] 2017 WL 895569, at *3 (M.D. Pa. Mar. 7, 2017). In other words, "there must be a connection between the underlying complaint and the relief requested in the motion for a preliminary injunction." Id. (citing Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010)). A district court "should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997) (citing De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)).
>
> Finally, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are "in court" . . .'". Sti[le] v. Fed. Bureau of Prisons, [No. 16-cv-03832,] 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting Muhammad v. Director of Corrections, [No. 07-cv-00375,] 2009 WL 161075, at *1 (E.D. Ca[l]. Jan. 22, 2009)). Thus, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).

See Talbert v. Irvin, No. 24-cv-00122, 2024 WL 3678875, at *1–2 (W.D. Pa. July 2, 2024), report and recommendation adopted sub nom., Talbert v. Irwin, 2024 WL 3677495 (W.D. Pa. Aug. 6, 2024).

Finally, the Prison Litigation Reform Act ("PLRA") imposes certain limitations on district courts when granting temporary restraining orders or preliminary injunctive relief in

6

cases filed by prisoners in which they challenge their prison conditions. In this regard, the PLRA provides in relevant part as follows:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

See 18 U.S.C. § 3626(a)(2).

**B.     Section 2241 Habeas Petitions**

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim

7

challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)).

### C. Exhaustion of Administrative Remedies Under Section 2241

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761–62 (citations omitted)). Exhaustion is not required when it would not promote these goals. See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and internal quotation marks omitted)). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

### III. DISCUSSION

#### A. Green's Motion for "Temporary Injunctive Relief"

Green has moved for "temporary injunctive relief" relating to several issues allegedly occurring at USP Canaan. (Doc. No. 11.) These issues include, inter alia: (1) USP Canaan

mailroom staff allegedly violating BOP Program Statement 5265.14 by opening mail from courts outside the presence of the addressee inmate, see (id. at 1–2); (2) USP Canaan officials allegedly inflicting "corporal punishment" on the inmates by "locking down entire housing units when there is no room in the" Special Housing Unit ("SHU") until such time as bed space becomes available in the SHU, see (id. at 2–3); (3) USP Canaan mailroom staff allegedly violating BOP Program Statement 5266.11 by "copying all incoming pictures, including those arriving from a BOP authorized vendor called Freeprints," see (id. at 3–4); and (4) USP Canaan's Trust Fund Supervisor allegedly "misappropriating funds" in violation of BOP Program Statement 4500.12 by using profits from USP Canaan's commissary "in staff budget areas affected by cuts, areas such as computers, staff appreciation days, and other instances of those proceeds going to staff related items . . . ." See (id. at 4–5). For relief, Green seeks "an order of [i]njunctive [r]elief to direct the staff at USP Canaan to follow established [BOP] policy/program statements and to cease and desist in infringing upon the [c]onstitutional [r]ights enumerated within this filing." See (id. at 5).

      The Court will deny Green's motion. Preliminarily, despite Green's reference to "temporary injunctive relief" in the title of his motion, the Court construes the motion as one seeking a preliminary injunction because Green has not satisfied the requirements for obtaining a TRO insofar as he failed to submit an affidavit "clearly showing that immediate and irreparable injury, loss, or damage will result to [him] before [Respondent] can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A).[6] Green also did not "certif[y] in writing any efforts made to give notice [to Respondent] and the reasons why it should not be required." See Fed. R. Civ. P. 65(b)(1)(B); see also Thompson v. Vets. United Home Loans, 25-cv-00545, 2025 WL 1784518,

---

[6] The Court recognizes that Rule 65(b)(1) also allows the movant to submit facts through "a verified complaint," however, Green could not file a verified complaint in this habeas action.

at *3 n.5 (E.D. Tex. June 3, 2025) (applying Rule 65(b)(1)(B) notice standard to pro se movant), report and recommendation adopted, 2025 WL 1672900 (E.D. Tex. June 13, 2025); Terry v. City of Jackson, No. 24-cv-12182, 2025 WL 609995, at *2 (E.D. Mich. Feb. 25, 2025) (same); Nathreen v. Denver Hous. Auth., No. 25-cv-00051, 2025 WL 53341, at *4 (D. Colo. Jan. 9, 2025) (same), appeal dismissed sub nom. Nakanwagi v. Denver Hous. Auth., 2025 WL 1898250 (10th Cir. Mar. 28, 2025); Khalfani v. Way, No. 24-cv-07749, 2024 WL 4366916, at *3 (D.N.J. Oct. 1, 2024) ("[F]ederal courts across the country have held that a plaintiff's pro se status does not permit [them] to evade Rule 65's requirements." (citing cases)), recons. denied, 2024 WL 4501813 (D.N.J. Oct. 16, 2024); cf. Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (explaining that pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013))).

     Even construing Green's motion as a motion for a preliminary injunction, he is not entitled to preliminary injunctive relief. Nothing that Green complains about in his motion is referenced in his habeas petition. His habeas petition relates to a single issue, i.e., whether the BOP should consider and ultimately place him on home confinement for the final twelve (12) months of his federal sentence. His motion, on the other hand, involves complaints about USP Canaan (1) processing legal mail from the courts as well as certain pictures, (2) using money obtained from the commissary, and (3) being held in his cell for excessive periods due to a lack of space in the SHU. Green cannot demonstrate a likelihood of success on the merits when his requests for injunctive relief have no relation to his habeas petition. See Adams v. Freedom Forge Corp., 204 F.3d 475, 489–90 (3d Cir. 2000) (concluding that a preliminary injunction was inappropriate where the harm alleged in the request for preliminary injunctive relief was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures

10

that a preliminary injunction affords" (citations omitted)); Moneyham v. Ebbert, 723 F. App'x 89, 92 (3d Cir. 2018) (unpublished) ("The District Court was correct to deny this requested injunction because it involved allegations unrelated to the complaint"); Pinson v. United States, No. 17-cv-00584, 2017 WL 5158628, at *6 (M.D. Pa. Nov. 7, 2017) ("While '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally,' an injunction should not issue when 'it deals with a matter lying wholly outside the issues in the suit.'" (quoting De Beers Consol. Mines, 325 U.S. at 220)); see also Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint . . . ."). Accordingly, the Court will deny Green's motion for a preliminary injunction.[7]

### B. Green's Section 2241 Habeas Petition

#### 1. The Parties' Arguments

##### a. Green's Petition

In his Section 2241 petition, Green asserts that he is entitled to twelve (12) months of home confinement prior to his November/December 2026 release date pursuant to BOP Program Statements 7300.09 and 5410.01, as well as Section 3624(g) of the SCA.[8] (Doc. No. 1 at 2, 6–7.) Green contends that the BOP has failed to arrange for him to be transferred to home confinement. (Id. at 6.) For relief, Green seeks an Order directing USP Canaan officials to

---

[7] Even if the Court did not deny the motion on its merits, the Court would deny it as moot because Green's habeas petition will be dismissed.

[8] Although Green mentions having a November or December 2026 release date, according to the BOP's Inmate Locator (https://www.bop.gov/mobile/find_inmate/byname.jsp), he has an anticipated release date of December 4, 2026. See also (Doc. No. 7-2 ¶ 3 (stating that Green's "anticipated release date is currently December 4, 2026, via Good Conduct Time release")).

11

arrange for him to get placed in home confinement for the final twelve (12) months of his sentence. (Id. at 7.)

### b. Respondent's Response

Respondent opposes Green's habeas petition for three (3) reasons. First, Respondent argues that the Court should dismiss the petition because Green failed to exhaust the BOP's administrative remedy procedures before filing his petition. (Doc. No. 7 at 8–11.) Second, Respondent contends that Green cannot obtain habeas relief because he is not entitled to prerelease custody placement under the SCA and, therefore, the BOP did not abuse its discretion in denying him such placement. (Id. at 11–15.) Third, and finally, Respondent asserts that the Court should deny the petition because Green mistakenly references Section 3624(g) as the SCA, when it is part of the First Step Act ("FSA"), and to the extent that Green is seeking FSA time credits, he is ineligible for said credits. (Id. at 15–17.)

### c. Green's Traverse

In Green's traverse, he first addresses Respondent's argument that his petition should be dismissed due to his failure to exhaust administrative remedies within the BOP. (Doc. No. 10 at 1–2.) As best the Court can discern, Green contends that he does not have the burden to plead and prove that he exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). (Id. at 1 (citing Jones v. Bock, 549 U.S. 199 (2007)). Green also asserts that the PLRA's exhaustion requirement does not apply to Section 2241 habeas petitions. (Id. at 2.) He further appears to argue that he is entitled to judicial review of the BOP's decision about home confinement pursuant to the Administrative Procedures Act ("APA") because he is an individual who has suffered a "legal wrong because of agency action." See (id.).

Regarding Respondent's second argument, Green asserts that the BOP must consider him for RRC/home confinement because of the timing of his release date. (Id. at 3 (citing Rodriguez

12

v. Smith, 541 F.3d 1180 (9th Cir. 2008)). He contends that his transfer to prerelease custody is mandatory (id. at 5 (citing cases)), and he claims that the BOP is denying him consideration for home confinement because of a detainer lodged against him based on a criminal case that has since been dismissed (id. at 7–8). He also believes that BOP officials retaliated against him on July 11, 2025, when his cell was searched and certain documents, which included "copies of the warrants and final disposition of the so-called detainer," were removed from his cell. See (id. at 8–9).[9]

### 2. Analysis

After considering the record and the parties' submissions, the Court concludes that Green failed to exhaust his administrative remedies before filing his habeas petition.[10] In reaching this conclusion, the Court notes that Green correctly points out that there is no explicit statutory exhaustion requirement, such as the PLRA's exhaustion requirement, for Section 2241 habeas petitions. See Hall v. Warden FCI-Allenwood, No. 25-cv-00908, 2025 WL 1531570, at *1 (M.D. Pa. May 29, 2025) (explaining that Section 2241 habeas petitioner was correct that "the PLRA's exhaustion requirement does not apply to Section 2241 petitions"); see also Wilson v. Williams, 961 F.3d 829, 839 (6th Cir. 2020) ("The PLRA does not apply in habeas proceedings." (citing 18 U.S.C. § 3626(g)(2))); Walker v. O'Brien, 216 F.3d 626, 633–34 (7th Cir. 2000) ("[I]f a case is properly filed as an action under 28 U.S.C. §§ 2241, 2254, or 2255, it is not a 'civil action' to which the PLRA applies."). Yet, Green's accurate identification of the applicable law does not help him here because, as explained above, "the Third Circuit has consistently held that exhaustion applies" to Section 2241 claims by federal prisoners. See Hall, 2025 WL 1531570, at

---

[9] Green does not appear to contest Respondent's third argument, namely, that he is seeking FSA earned time credits and is not entitled to such credits.

[10] Given this conclusion, the Court will not address Respondent's other arguments.

*1 (citing <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000)); <u>see also</u> <u>Nyenekor v. Warden Jessup FCI</u>, 775 F. App'x 34, 35 n.1 (3d Cir. 2019) (noting that Section 2241 habeas petition "conflated the PLRA's statutory exhaustion requirement for civil rights cases with the judicial doctrine of exhaustion applicable to habeas petitions under § 2241"); <u>Watkins v. Haynes</u>, 445 F. App'x 181, 183–84 (11th Cir. 2011) (unpublished) ("Although the exhaustion requirement of the [PLRA] does not apply to habeas petitions, § 2241 petitioners nevertheless are required to exhaust their administrative remedies before habeas relief can be granted." (citing <u>Skinner v. Wiley</u>, 355 F.3d 1293, 1294–95 (11th Cir. 2004))).  As such, Green was still required to fully exhaust his administrative remedies with the BOP prior to filing his petition in this case and, contrary to his argument in his traverse (Doc. No. 11 at 5), he has the burden to show he fully exhausted administrative remedies before bringing his Section 2241 petition.  See <u>Meyers v. Martinez</u>, 427 F. App'x 125, 127 (3d Cir. 2011) (unpublished) ("It was Meyers' burden to prove that he exhausted his administrative remedies—here, completion of the BOP's multi-tier Administrative Remedy Program—and he failed to do so." (internal citation omitted)); <u>Thompson v. Ricci</u>, 326 F. App'x 116, 118 n.4 (3d Cir. 2009) ("Thompson of course has the burden of demonstrating exhaustion of his administrative remedies before proceeding under § 2241." (citations omitted)); <u>see also</u> <u>Davis v. Pa. Dep't of Corr.</u>, No. 15-cv-00587, 2016 WL 7131565, at *3 (W.D. Pa. Dec. 6, 2016) ("In contrast to civil rights actions and the [PLRA], where exhaustion is an affirmative defense, and non-exhaustion is to be proven by the defendants, in habeas petitions, exhaustion is a condition precedent to filing with the consequent burden of proving exhaustion on the habeas petitioner." (internal citation omitted)).

  Here, Green does not attempt to assert that he exhausted his administrative remedies with the BOP, nor could he.  The record shows he filed two (2) administrative remedies pertaining to home confinement and prerelease placement, Nos. 1236522 and 1240943.  Green did not

complete the administrative remedy process for No. 1236522 because he did not appeal the Regional Director's denial to the BOP Central Office. In addition, Green had not completed the administrative remedy process for No. 1240943 insofar as he was still awaiting a decision by the Regional Director on appeal at the time he filed his Section 2241 petition in this case. Therefore, because Green essentially acknowledges that he has not exhausted his administrative remedies, and there does not appear to be any ground upon which to excuse exhaustion, the Court will dismiss his Section 2241 petition without prejudice for failure to exhaust administrative remedies.[11]

## IV. CONCLUSION

For the reasons discussed above, the Court will deny Green's "Motion for Temporary Injunctive Relief Order," dismiss his Section 2241 habeas petition without prejudice for failure to exhaust administrative remedies, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania

---

[11] Although Green mentions the APA as a basis for the Court to consider his claims despite his failure to exhaust, he is mistaken as to the APA's applicability to his claims in this case. See 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.").